UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No.** |
| | : | |
| v. | : | |
| | : | |
| **PATRICIA ANN MOORE,** | : | **VIOLATION:** |
| | : | **18 U.S.C. § 371** |
| **Defendant.** | : | **(Conspiracy to Commit Wire Fraud)** |
| | : | |
| | : | **28 U.S.C. § 2461(c)** |
| | : | **(Criminal Forfeiture)** |

## INFORMATION

The United States Attorney informs the Court that:

### COUNT ONE
(Conspiracy to Commit Wire Fraud)

Introduction

At all times material to this Information:

1. The National Union of Protective Services Associations ("NUPSA") is a labor organization based in Washington, D.C., that represents security enforcement officers. NUPSA is a certified representative of employees organized under the provisions of the National Labor Relations and Labor Management Reporting and Disclosure Acts ("NLRA" and "LMRDA," respectively).

2. The National Union of Law Enforcement Associations ("NULEA") is a labor organization based in Washington, D.C., that represents law enforcement officers. NULEA is a certified representative of employees organized under the provisions of the Civil Service Reform Act ("CSRA").

3. Collectively, the NLRA, LMRDA, and CSRA establish standards of conduct for union

1

officials and union employees, whether employed directly or indirectly. The Acts also mandate annual financial disclosures by the unions and union officials, as well as by firms doing business with the unions. These standards and disclosure requirements exist to ensure the integrity of union assets and to provide transparency to union membership and the public at large into the business dealings of labor organizations.

4. Both NUPSA and NULEA (hereinafter referred to collectively as "the UNIONS") represent their members in collective bargaining with employers engaged in industries affecting interstate commerce with respect to wages, hours, grievances, and other terms and conditions of employment. Pursuant to that representation, the UNIONS have executed collective bargaining agreements with several employers covering security enforcement officers and law enforcement officers employed in the District of Columbia and elsewhere.

5. The UNIONS have bank accounts at a Washington, D.C. branch of SunTrust Bank, N.A.

6. Labor Consultants, Inc. ("LCI") is a business that was founded in 2006 to provide labor consultation services to NUPSA and NULEA. LCI also has bank accounts at a Washington, D.C. branch of SunTrust Bank, N.A.

7. Person A Associates is a security guard firm that was founded in 2004 or earlier.

8. The UNIONS, LCI, and Person A Associates were all founded by Person A, a retired D.C. police detective. They all have offices at 3150 Monroe Street, NE, Washington, D.C.

9. From in or about March 2004 until the present, defendant PATRICIA ANN MOORE ("MOORE"), who has a daughter with Person A, was the owner of Person A Associates. While MOORE was nominally the sole owner of Person A Associates beginning in March 2004, Person A was actually still in control of the company.

10. From in or about February 2004 until November 2010, defendant MOORE was also

employed on a part-time basis at NUPSA, NULEA, and/or LCI. MOORE'S duties at the UNIONS and LCI were administrative in nature. Her duties at NUPSA and NULEA included acting as a signatory, fiduciary, and custodian - along with Person A - of various financial accounts containing UNION member dues and employer contributions for member fringe benefits. Similarly at LCI, MOORE was a signatory, fiduciary, and custodian - along with Person A - of various financial accounts into which UNION assets were ultimately deposited. In 2005 and 2006, MOORE was also a business agent for the UNIONS and LCI and acted as the unelected Secretary-Treasurer of the UNIONS.

11. At all times, Person A was MOORE'S supervisor at the UNIONS and LCI. With Person A's knowledge and approval, MOORE'S principal place of work was at her residence located in Lanham, Maryland.

12. Person A issued two business credit cards to MOORE during her tenure at the UNIONS and LCI. These were an American Express card, number ending in 1264, on the account of "[Person A] – Natl Union Law Enfor," and a Delta Sky Miles card, number ending in 3010, on the account of Person A, the bills for both of which were paid out of bank accounts into which UNION funds were deposited.

### The Conspiracy

13. Beginning in or about February 2004 and continuing up to and including April 2008, within the District of Columbia and elsewhere, MOORE did knowingly conspire and agree with Person A to commit offenses against the United States, that is violations of Title 18, United States Code, Section 1343 (Wire Fraud).

### A Goal of the Conspiracy

14. It was a goal of the conspiracy for the co-conspirators to enrich themselves by

fraudulently obtaining monies from the UNIONS by means of, inter alia, submitting and approving false and fraudulent timesheets for MOORE, transferring funds from the UNIONS to Person A Associates without authorization, and using credit cards, the bills for which were paid out of bank accounts containing UNION funds, for personal purchases without reimbursing the UNIONS or LCI. It was part of the conspiracy that MOORE and Person A devised, executed, and attempted to execute a scheme to defraud in which it was reasonably foreseeable that interstate wire communications would be used to further the scheme.

### Manner and Means of the Conspiracy

In order to achieve the goal of the conspiracy, the co-conspirators used the following manner and means, among others:

15. It was part of the conspiracy that MOORE submitted to Person A false and fraudulent timesheets, on which the number of hours she worked for the UNIONS and LCI was inflated; Person A approved these false and fraudulent timesheets, knowing that MOORE had not worked the stated number of hours; and MOORE obtained payment from the UNIONS and LCI far in excess of what she had legitimately earned.

16. It was further part of the conspiracy that MOORE made false and fraudulent statements to U.S. Department of Labor ("DOL") investigators about the hours she worked at the UNIONS and LCI in order to conceal and disguise the fraud activity and further the scheme.

17. It was further part of the conspiracy that MOORE transferred funds from NUPSA and LCI bank accounts to Person A Associates without the UNIONS' authorization.

18. It was further part of the conspiracy that Person A issued to MOORE two credit cards – an American Express card and a Delta Sky Miles card – the bills for which were paid out of bank accounts into which UNION funds were deposited.

19.     It was further part of the conspiracy that MOORE used the aforementioned credit cards for personal purchases without reimbursing the UNIONS or LCI.

## Overt Acts

20.     In furtherance of the conspiracy and in order to achieve the goals thereof, MOORE and Person A, within the District of Columbia and elsewhere, committed overt acts, including, but not limited to, the following:

For the purpose of executing, and attempting to execute, the scheme and artifice, MOORE did transmit and cause to be transmitted in interstate commerce, by means of a wire communication, certain writings, signs, signals, and sounds, that is, the following personal charges on the American Express card, number ending in 1264, that was issued to MOORE by Person A purportedly for business expenses of the UNIONS and LCI:

| Date | Amount | Retailer | Type of Expense |
|---|---|---|---|
| 10/06/2006 | $113.92 | Prime Executive Limo Services | Car service |
| 10/06/2006 | $126.72 | Prime Executive Limo Services | Car service |
| 11/08/2006 | $36.36 | Prime Executive Limo Services | Car service |
| 12/05/2006 | $118.80 | Prime Executive Limo Services | Car service |
| 12/06/2006 | $126.72 | Prime Executive Limo Services | Car service |
| 12/12/2006 | $118.80 | Prime Executive Limo Services | Car service |
| 03/27/2007 | $56.43 | Citgo | Gasoline |
| 04/02/2007 | $30.42 | Shell Oil | Gasoline |
| 04/28/2007 | $103.31 | Jerry's Seafood | Food |
| 11/28/2007 | $106.80 | Prime Executive Limo Services | Car service |
| 03/12/2008 | $4.23 | Pizza Hut | Food |
| 06/11/2008 | $285.75 | Walt Disney World Sheraton | Lodging |

**(Conspiracy to Commit Wire Fraud, in violation of
Title 18, United States Code, § 371)**

## FORFEITURE ALLEGATION

20.     The violation alleged in Count One of this Information, Conspiracy to Commit Wire

Fraud, in violation of Title 18, United States Code, Section 371, is re-alleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America, pursuant to the provisions of Title 28, United States Code, Section 2461(c) (incorporating Title 18, United States Code, Section 981(a)(1)(C)).

21. As a result of the offense alleged in Count One of this Information, the defendant in this Information, PATRICIA ANN MOORE, shall forfeit to the United States, pursuant to Title 28, United States Code, Section 2461(c) (incorporating Title 18, United States Code, Section 981(a)(1)(C)), any property constituting, or derived from proceeds obtained directly or indirectly, as a result of the said violation, including but not limited to:

    (a)    <u>Money Judgment</u>:

        (i) a judgment in favor of the United States for a sum of money in the amount of one-hundred-nine thousand dollars and no cents ($109,866.17), representing the amount of proceeds obtained as a result of the offense, Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 371.

22. By virtue of the commission of the offense charged in Count One of this Information, any and all interest that the defendant, PATRICIA ANN MOORE, has in the property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of the charged offense, is vested in the United States and hereby forfeited to the United States pursuant to Title 28, United States Code, Section 2461 (incorporating Title 18, United States Code, Section 981(a)(1)(C)).

23. If any of the property described above as being subject to forfeiture pursuant to Title 28, United States Code, Section 2461 (incorporating Title 18, United States Code, Section 981(a)(1)), as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property that cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the said defendant up to the value of said property listed above as being subject to forfeiture.

**(Criminal Forfeiture, Title 28, United States Code, Section 2461 (incorporating Title 18, United States Code, Section 981(a)(1)(C))**

RONALD C. MACHEN JR.
United States Attorney for the
District of Columbia

By: _____
ELLEN CHUBIN EPSTEIN
DC Bar #442861
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 252-1773
Ellen.Chubin@usdoj.gov